UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------x
Jean Martin

                              Plaintiff,

            - against -

Fitzpatrick Neil St. Hill Dodson, Esq.,
a/k/a F. St-Hill Dodson, Esq.; Worldwide
Marketing USA, Inc.; Pinhas Brown,
individually and as President of
Worldwide Marketing USA, Inc.;
Benjamin Hager; Mallow Konstam &
Hager, P.C.; Austin Smith; Atlantis Land
Services; Davida Stein; Credit Suisse
Financial Corp.; Northside Capital Corp.;
New World New York Realty; XYZ
Corporation; Fidelity Title Insurance
Company; Select Portfolio Services, Inc.;
and Jane and John Does, whose names are
presently unknown, being principals and
owners of Northside Capital Corp. and
XYZ Corporation and the individuals who
issued the appraisal and participated in
obtaining the mortgage in connection with
the subject real estate transactions;

                              Defendants.
--------------------------------------------------x

OPINION
AND ORDER
08 CV 1311 (NG)(JO)

GERSHON, United States District Judge:

        Plaintiff, Jean Martin, commenced this suit against the above-captioned defendants for

multiple acts of fraud, conspiracy to commit fraud, aiding and abetting the commission of fraud,

professional malpractice, breach of fiduciary duty, and violations of federal and state statutes,

specifically, the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601 *et seq*.; the Real Estate

Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601 *et seq*.; and the New York State

Deceptive Practices Act, NYGBL § 349.

        This court has jurisdiction over plaintiff's TILA and RESPA claims pursuant to 28 U.S.C.

§ 1331 (general federal question jurisdiction) and supplemental jurisdiction over plaintiff's state claims pursuant to 28 U.S.C. § 1367.

Presently before the court is plaintiff's motion for partial summary judgment, pursuant to Fed. R. Civ. P. 56, against defendant Fitzpatrick Neil St. Hill Dodson, Esq., a/k/a F. St-Hill Dodson, Esq. ("Dodson"), solely on her claim against Dodson for conversion. Dodson is the sole remaining defendant after all other defendants have reached settlements with the plaintiff or defaulted. There is no dispute that New York state law applies. For the reasons set forth below, plaintiff's motion is granted.

## FACTS

Unless otherwise indicated, the following facts are undisputed.

Plaintiff is the purchaser of residential property located at 1063 Greene Avenue, Brooklyn, New York (the "Property"). Defendant Worldwide Marketing USA, Inc. ("Worldwide") was the seller of the Property. In January, 2007, defendant Austin Smith ("Smith") had a contract of sale to purchase the Property from Worldwide for the price of $570,000 (the "Contract"). Dodson represented Smith in connection with his contract of sale to purchase the Property.

On March 28, 2007, Smith asked Worldwide to amend the Contract (the "Amended Contract") by increasing the purchase price to $800,000 and by shifting the clearing of repair violations from the seller to the purchaser, and Worldwide agreed. The Amended Contract also specified that the seller would return $162,000 ($54,000 for each of the three apartments on the premises) at the time of closing to the purchaser in order to offset the purchaser's cost for repairing violations on the property.

In addition, the Amended Contract included Smith's right to assign the Amended Contract.

An Agreement to Assign the Contract (the "Assignment") was executed by Martin and Smith on March 30, 2007. The Assignment provided that Smith would "assign all his rights, title and interest" in the Amended Contract to Martin and that Martin would "purchase and assume all of Smith's rights, title, interest and obligations" with respect to the Amended Contract. The Assignment specified that Martin would pay Smith, and that Smith would "accept, as and for the assignment of all of [Smith's] rights, title and interest in the [Amended] Contract the sum of $1.00, and [Martin] shall assume all obligations under said [Amended] Contract including all adjustments made ...."

Dodson was Smith's long-time attorney, and became Martin's attorney only at the time of the Assignment. At no time did Dodson disclose to Martin his dual representation, nor did Dodson disclose that he had represented Smith more than 10 times in the past. The plaintiff met Dodson for the first time at the closing for the sale of the Property, at which time the Assignment was also executed. Other than "letting [the plaintiff] know what [the assignment] was and then asking her to sign it," Dodson offered no legal advice to plaintiff.

At the closing, Worldwide paid plaintiff, as Smith's assignee and in accordance with paragraph 34 of the Rider to the Amended Contract, $159,334.43 for the repair violations.[1] Worldwide issued a check in the amount of $159,334.43 (the "Check") to "F. St. Hill Dodson as Attorney." Dodson acknowledged at his deposition that he accepted this check "as attorney for Ms. Martin." Dodson did not disburse the proceeds of the check to plaintiff; instead, he distributed all the proceeds to third parties, including Smith. He admits that he did so without any written or verbal consent from plaintiff. Dodson deposited at least $10,000.00 of the Check into an account in the

---

[1] Worldwide's payment was less than the $162,000.00 rebate provided for in the Amended Contract. The discrepancy appears to reflect a setoff by Worldwide for adjustments and charges in its favor. For the purposes of this motion, plaintiff accepts that $159,334.43 was the amount due to her at the closing.

name of FSD Consulting, an entity in which Dodson had a personal interest. According to Dodson, he distributed $75,000 to $85,000 (he didn't recall the exact amount) to Smith in consideration of the Assignment. It is unclear from the parties' submissions where the remainder of the monies from the Check went, but the parties agree that plaintiff did not receive any distribution.

## DISCUSSION

### Standard of Review

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed.R.Civ.P. 56(c). A genuine issue of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must construe the facts in the light most favorable to the non-moving party, and all reasonable inferences and ambiguities must be resolved against the moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986); *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999). However, the non-moving party may not "rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir.1986), but "must come forward with specific facts showing that there is a genuine issue for trial," Matsushita, 475 U.S. at 586-8 (emphasis removed).

### Plaintiff's Claim for Conversion Against Dodson

To establish a claim of conversion under New York law, a plaintiff must show legal ownership or an immediate superior right of possession to a specifically identifiable thing and must

show that the defendant exercised unauthorized dominion over the thing in question to the exclusion of the plaintiff's rights. *Batsidis v. Batsidis*, 9 A.D.3d 342, 343 (2d Dep't 2004). Money may be the subject of conversion if it is specifically identifiable, and there is an obligation to return it or treat it in a particular manner. *Hoffman v. Unterberg*, 9 A.D.3d 386, 388 (2d Dep't 2004). When funds are provided for a particular purpose, the use of those funds for an unauthorized purpose constitutes conversion. *Id.* "Where the original possession is lawful, a conversion does not occur until the defendant refuses to return the property after demand or until he sooner disposes of the property." *Seanto Exports v. United Arab Agencies*, 137 F.Supp.2d 445, 451 (S.D.N.Y. 2001) (internal citation and quotation marks omitted).

It is undisputed that, at the closing for the Property, Dodson received a check for $159,334.43 which was made out to him "as Atty" for plaintiff. The Assignment expressly provides that the money was to be returned to the buyer, that is, plaintiff, and Dodson admits that he accepted the money in his capacity as plaintiff's attorney. He also admits that he disbursed all the money to other parties without plaintiff's consent.[2] Dodson contends, however, that plaintiff has "offered no other basis as to why [she] is entitled to the funds" other than the fact that he received the funds in his capacity as her attorney.

On the contrary, the evidence establishes plaintiff's entitlement to the money. The Assignment assigned all of Smith's rights set out in the Amended Contract, including the right to the price adjustment refund, to plaintiff for the sole consideration of $1.00. Plaintiff, therefore, was

---

[2]  At his deposition, Dodson testified that he was instructed by defendant Smith as to how to disburse the funds and that he followed Smith's instructions.

However, in his opposition to the instant motion, Dodson contends that he had plaintiff's implied consent to disburse the funds in question because he understood that plaintiff was working with Smith and therefore Smith's instructions were sufficient consent. There is no evidence offered that plaintiff authorized Smith to be her agent as to how to disburse the funds.

entitled to the refund from the seller, and the funds belong to her. Dodson had no right to disburse the funds without plaintiff's consent, and, by doing so, he converted her funds. Dodson's argument as to whether plaintiff ratified the Amended Contract has no bearing on the instant motion as plaintiff is not challenging the validity of the Amended Contract, the Assignment or the validity of her purchase of the Property.

Dodson also argues that plaintiff's motion should not be granted because of the doctrine of *in pari delicto* which mandates that "courts will not intercede to resolve a dispute between two wrongdoers" who have participated in "the same sort of wrongdoing." *Kirschner v. KPMG LLP*, No. 151, 152, --- N.E.2d ---, 2010 WL 4116609 (N.Y. Oct. 21, 2010); *see also Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 307 (1985). *In pari delicto* is "an affirmative defense which defendants have the burden to prove*." In re Parmalat Securities Litigation*, 659 F. Supp.2d 504, 530 (S.D.N.Y. 2009).

Dodson argues that plaintiff's wrongdoing was her involvement in a scheme to fraudulently secure a mortgage. The only support defendant offers for this claim is that plaintiff admitted she never filled out any mortgage forms in connection with the purchase of the Property. He does not offer any evidence or even affidavits from other defendants, who include the companies that financed the purchase of the Property. Dodson's theory is pure conjecture, as it is not supported by any evidence. *Knight*, 804 F.2d at 12. In contrast to his conjecture as to plaintiff's wrongdoing, Dodson readily admits that he used several "devices" to "make the deal happen."

Moreover, plaintiff's supposedly wrongful actions do not possess the necessary connection to the claim in issue. Even assuming, *arguendo*, that plaintiff made misrepresentations to mortgage companies for the purchase of the residence in question, any such misrepresentations have nothing

to do with whether plaintiff was entitled to the refund monies which Dodson accepted in his capacity as plaintiff's attorney and which plaintiff was owed as a result of the Amended Contract and the Assignment. In addition, Dodson was in no way injured by plaintiff's alleged wrongful conduct in buying the Property as Dodson was paid for his services in connection with the Property's assignment and purchase. Therefore, he may not invoke an *in pari delicto* defense. *390 West End Assoc. v. Baron*, 274 A.D.2d 330, 332-333 (1st Dep't 2000) (defendant must show that he was injured by plaintiff's wrongful conduct).

**Plaintiff's Judiciary Law Claim and Claim for Prejudgment Interest**

In her papers in support of partial summary judgment against Dodson, plaintiff argues that she is entitled to treble damages pursuant to Judiciary Law § 487(2). However, Judiciary Law § 487(2) is not a damages statute; it creates a separate claim that a plaintiff must plead and then prove. Because plaintiff did not plead that Dodson violated Judiciary Law § 487(2) in her amended complaint, she cannot now receive treble damages provided for there.

Plaintiff requested prejudgment interest pursuant to CPLR 5001(a) from March 30, 2007, the date of the closing, when defendant received the money on her behalf. This request is granted.

**CONCLUSION**

For the reasons set forth above, plaintiff's motion for summary judgment on her conversion claim against Dodson is granted. Plaintiff is entitled to judgment in the amount of $159,334.43 against defendant Dodson and to prejudgment interest from March 30, 2007.

Plaintiff is directed to inform the Court within 14 days as to whether she plans to proceed on her remaining claims against Dodson, and if so, in what manner.

SO ORDERED.

/s/ Nina Gershon (electronically signed)

NINA GERSHON
United States District Judge

Dated:        Brooklyn, New York
              November 10, 2010